

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| VICTOR CHARLES FOURSTAR, JR., <br><br> Plaintiff, <br><br> vs. <br><br> MELVIN CLARK, et al., <br><br> Defendants. | Cause No. CV 16-126-GF-SPW <br><br><br> ORDER |
| VICTOR CHARLES FOURSTAR, JR., <br><br> Plaintiff, <br><br> vs. <br><br> MICHAEL ELIASON, et al., <br><br> Defendants. | Cause No. CV 16-113-GF-SPW <br><br><br> ORDER |

## I. Background

These two actions were filed in November and December 2016. They were consolidated because they involve very similar allegations. They were stayed pending resolution of Plaintiff Fourstar's appeals challenging revocation of his federal supervised release.

1

Fourstar contends that his civil rights are violated by ongoing collateral consequences of his 2003 federal conviction for aggravated sexual abuse and his 1992 Montana conviction for sexual intercourse without consent. Fourstar discharged the state sentence on December 13, 1997, and is no longer in custody by reason of that conviction. *See, e.g.*, Presentence Report ¶ 31, *United States v. Fourstar*, No. 4:02-CR-52-SEH (D. Mont. revised Feb. 10, 2003); Order at 2, *State v. Fourstar*, No. DA 13-0658 (Mont. Oct. 30, 2013); Order at 1–2, *Fourstar v. Zemyan*, No. DA 12-0440 (Mont. Aug. 14, 2012); *Maleng v. Cook*, 490 U.S. 488, 491–92 (1989) (per curiam).

Fourstar remains in custody by reason of his federal conviction.[1] He pursued direct appeal in 2003 and filed motions under 28 U.S.C. § 2255 and/or common-law petitions seeking collateral review, but he has yet to invalidate the federal conviction or sentence. *See, e.g.*, *United States v. Fourstar*, 87 Fed. Appx. 62, 63–65, 2004 WL 193245, No. 03-30121 (9th Cir. Jan. 30, 2004); Order (Doc. 131), *United States v. Fourstar*, No. 4:02-CR-52-SEH (D. Mont. Dec. 20, 2005); Order Denying Certificate of Appealability, *United States v. Fourstar*, No. 06-35273 (9th Cir. July 25, 2006).

Fourstar is currently serving a ten-month prison term following revocation

---

[1] Detention and supervised release both constitute "custody" within the meaning of 28 U.S.C. § 2255. *See Matus-Leva v. United States*, 287 F.3d 758, 761 (9th Cir. 2002).

2

of his supervised release. After he completes the prison term, he will serve 39 months on supervised release. *See* Revocation Judgment (Doc. 260) at 3–4, *Fourstar*, No. 4:02-CR-52-DLC (D. Mont. Oct. 18, 2018).

## II. Stay and Motion to Amend

Since these actions were filed in November and December 2016, Fourstar's supervised release has been revoked three times. These actions were stayed on March 6, 2017, pending resolution of the first two revocation proceedings and appeals. The appeals were concluded on July 12, 2018. But, in August 2018, a third revocation proceeding began and, on November 1, 2018, Fourstar filed a notice of appeal against the third successive revocation judgment. *See* Notice of Appeal (Doc. 270), *Fourstar*, No. 4:02-CR-52-DLC.

Fourstar moves to lift the stay. *See* Mot. to Lift Stay (16-113 Doc. 34). The Court believes it can reach an appropriate disposition of his claims without awaiting disposition of Fourstar's most recent revocation appeal. The stay will be lifted.

On March 6, 2017, the Court denied a motion to amend the complaint "subject to renewal after the resolution of criminal proceedings." Order (16-126 Doc. 11); *see also* Mot. to Am. Compl. (16-126 Doc. 7). The motion to amend is deemed renewed and is granted. It will be addressed along with Fourstar's Complaint in 16-126.

3

## III. Deficiencies in Complaints

Fourstar was a prisoner when he filed *Eliason*, the first of these two actions, but not when he filed *Clark*, the second. *Compare* Compl. (16-113 Doc. 3) at 2 ¶ I *with* Compl. (16-126 Doc. 2) at 1; Mot. to Proceed In Forma Pauperis (16-126 Doc. 1) at 6 ¶ 11. In both actions, he is proceeding in forma pauperis. The Court must review his complaint to determine whether it fails to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

Fourstar is also self-represented. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (internal quotation marks and citation omitted). Courts must briefly explain deficiencies that may be cured by amendment, *see Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012), but if a claim cannot be cured by amendment, "the court *shall* dismiss" it, 28 U.S.C. § 1915(e)(2) (emphasis added).

### A. Validity of Prior Convictions

A civil action is not an appropriate vehicle for challenging the validity of a conviction or sentence. *See Edwards v. Balisok*, 520 U.S. 641, 645, 649 (1997); *Heck v. Humphrey*, 512 U.S. 477, 486 (1994).

The complaint in *Eliason* alleges that various defendants failed to disclose

exculpatory evidence between 1992 and 1997. *See* Compl. (16-113 Doc. 3) at 13, 15. The motion to amend in *Clark* alleges that Fourstar was deprived of a right to present evidence in mitigation of his state sentence. *See* Mot. to Am. Compl. (16-127 Doc. 7) at 5. If material exculpatory evidence was withheld, or if Fourstar was unable to present material mitigating evidence, Fourstar's conviction and/or sentence is invalid, *see Giglio v. United States*, 405 U.S. 150, 153–55 (1972), but that would mean he may not proceed with this action. On the other hand, if evidence was actually presented, or was not withheld, or was not material, Fourstar suffered no constitutional injury. Therefore, whether these allegations are true or false, they are not cognizable in this action.

Fourstar also alleges that he was unlawfully detained from September 1, 1992, to December 13, 1997—the duration of his state sentence for sexual intercourse without consent. *See* Compl. (16-113 Doc. 3) at 13 & ¶¶ 2, 3. He could be entitled to damages for this detention only if his conviction was invalid. This allegation is not cognizable in this action.

Fourstar alleges that various State defendants unlawfully detained him on August 4 and 5, 1992, and from August 27, 1992, to September 1, 1992, and contends he was entitled to extradition proceedings before he could be prosecuted in state or federal court. *See* Compl. (16-113 Doc. 3) at 13 & ¶¶ 2, 3; *see also* Mot. to Am. Compl. (16-126 Doc. 7) at 3–4. To the extent Fourstar claims this

detention made the ensuing conviction or sentence invalid, his claim is barred by *Heck* and *Edwards*. To the extent Fourstar can state a claim for unlawful arrest and detention concluding in 1992, he should have said so within three years. *See* Mont. Code Ann. § 27-2-204(1); *Wallace v. Kato*, 549 U.S. 384, 391–92 (2007); *Wilson v. Garcia*, 471 U.S. 261, 280 (1985) (holding that forum State's limitations period for general personal injury actions applies to actions under § 1983). Even if something prevented him from saying so within three years, his filing history in this Court and in the Montana Supreme Court amply prove he was capable of saying so long before November 2016. Either these allegations are not cognizable at all, or they are 21 years too late.

Finally, to the extent Fourstar relies on the "bad men" clause of the Fort Laramie Treaty of 1868, it does not create an individual right that he has standing to enforce. As the Eighth Circuit has noted, the "plain language" of the treaty "imposes *an obligation on the tribe* to 'deliver up the wrong-doer to the United States.'" *United States v. Drapeau*, 414 F.3d 869, 878 (8th Cir. 2005) (emphasis in *Drapeau*). The contemporary Tribes have assumed a similar obligation. *See* 3 Fort Peck Tribes Comprehensive Code of Justice ("C.C.J.") § 401, *available at* https://fptc.ord/comprehensive-code-of-justice-ccoj/ (accessed Dec. 5, 2018). Fourstar mentions the Sweetgrass Hills Treaty of 1887 but does not identify a relevant provision.

All allegations necessarily implying the invalidity of Fourstar's convictions or sentences are dismissed as not cognizable in this action. All other claims that arise from defendants' conduct during and in relation to Fourstar's convictions or sentences, but that do not imply their invalidity, are dismissed as time-barred.

**B. Obligation to Register as a Sex Offender**

Fourstar claims various defendants violate his rights by requiring him to register as a sex offender and by causing him "to be wrongfully imprisoned beyond the statutory maximum." *See* Compl. (16-113 Doc. 3) at 12; Compl. (16-126 Doc. 2) at 2–3; *see also* Mot. to Am. Compl. (16-126 Doc. 7) at 1–2, 4. He contends the registration requirement violates the Ex Post Facto Clause and also has something to do with his 1992 Valley County conviction for sexual intercourse without consent.

The statutory maximum penalty for Fourstar's federal offense was "any term of years or life." 18 U.S.C. § 2241(a) (eff. Oct. 30, 1998). He was not incarcerated beyond the statutory maximum. *See, e.g., United States v. Huerta-Pimental*, 445 F.3d 1220, 1223–24 (9th Cir. 2006); *United States v. Montenegro-Rojo*, 908 F.2d 425, 431–34 (9th Cir. 1990). The statutory maximum penalty for the state offense was 20 years. *See* Mont. Code Ann. § 45-5-503 (1991). He was not incarcerated beyond that maximum either.

Assuming Fourstar is required to register based on the Valley County

conviction, that fact is not relevant to anything at issue here. Fourstar must register because he was convicted in this Court of aggravated sexual abuse, a violation of 18 U.S.C. § 2241(a). He committed the crime in 2002 and was sentenced in 2003. Initially, his registration requirement arose not from the Sexual Offender Registration and Notification Act ("SORNA") or the Adam Walsh Act of 2006[2] but from the Jacob Wetterling Crimes Against Children and Sexually Violent Predator Registration Program. This legislation was enacted in mid-September 1994, nearly eight years before Fourstar committed the federal crime of aggravated sexual abuse in violation of 18 U.S.C. § 2241(a). The Wetterling Act specifically designated aggravated sexual abuse a "sexually violent offense" and required convicted persons to register with the States or, if a State failed to establish a viable system of registration, with the Federal Bureau of Investigation. *See, e.g.*, 42 U.S.C. §§ 14071(a)(1)(A), (3)(B), (b)(3)(A), (4)–(5), (7)(A), (d), 14072(a)(3)(A), (b)(2), (c) (eff. Oct. 30, 1998); *see also* 42 U.S.C. § 14071(j)(1) (eff. Oct. 28, 2002).

SORNA repealed and replaced the Wetterling Act. *See* Pub. L. No. 109-248, tit. I, § 129, 120 Stat. 587, 601 (July 27, 2006). SORNA did not make anything that is relevant to Fourstar's case less clear or less lawful. *See, e.g.*,

---

[2] *See* The Adam Walsh Child Protection and Safety Act of 2006, Pub. L. No. 109-248, 120 Stat. 587 (July 27, 2006). Title I, subtitle A of the Act is the Sex Offender Registration and Notification Act, or "SORNA." The two names are frequently used interchangeably.

8

*United States v. Kebodeaux*, 570 U.S. 387, 391–92, 393 (2013). Fourstar's obligation to register would not violate the Constitution's Ex Post Facto Clause even if the facts were what he believes them to be. *See, e.g., Smith v. Doe*, 538 U.S. 84, 105–06 (2002). But, in fact, there is nothing after-the-fact about his obligation to register. Like the *Kebodeaux* Court, this Court is "not aware of any plausible counterargument to the obvious conclusion" that the Wetterling Act applied to Fourstar "as of the time of [his] offense [and] conviction" and that its provisions "imposed upon him registration requirements very similar to those that SORNA later imposed." *Kebodeaux*, 570 U.S. at 393.[3]

None of the defendants Fourstar names could have caused legally cognizable injury, because federal law requires Fourstar to register as a sex offender. All allegations suggesting Fourstar is not or cannot be required to register are dismissed for failure to state a claim.

### C. Conditions or Consequences of Supervised Release or Conviction

Fourstar claims various defendants violated his rights in executing one or more conditions of his supervised release, including but not limited to requiring him to register. He asserts it is difficult or impossible for him to find housing, attend the university, obtain employment, vote, own a gun, or engage in social

---

[3] Kebodeaux fully discharged his sentence before SORNA was enacted. Fourstar was serving his prison term for aggravated sexual abuse when SORNA was enacted. Kebodeaux was subject to SORNA, so Fourstar is too.

9

media use. He also asserts he is "brand[ed] as a moral leper." *See* Compl. (16-113 Doc. 3) at 13–14; Compl. (16-126 Doc. 2) at 2–3.

The Court is required to assume these allegations are true, and there is no reason to suppose they are not. *See, e.g.*, Admissions Review Letters 2016 (16-113 Doc. 2-1 at 1–2, 3); Admissions Review Letter 2017 (16-126 Doc. 2-1 at 8). But none of them demonstrate that a condition of Fourstar's supervised release is unlawful or that any condition has been executed in an unconstitutional manner. Each condition is contained in the principal judgment and multiple revocation judgments that have been entered against Fourstar after notice and an opportunity to be heard in person or through counsel. He has not identified a facially unconstitutional condition that any reasonable officer should recognize as unenforceable. *See, e.g., Malley v. Briggs*, 475 U.S. 335, 345–46 (1986). Fourstar's allegations that the defendants violate his rights by monitoring his compliance and otherwise enforcing his conditions of supervision, or by executing warrants for his arrest on petitions to revoke his supervised release, fail to state a claim on which relief may be granted. *See, e.g., Coulter v. Studeny*, 522 Fed. Appx. 147, 149–50 (3d Cir. 2013).

Fourstar's complaint in *Eliason*, filed November 7, 2016, alleges that he has suffered "banishment for life from his Fort Peck Indian Reservation." *See, e.g.*, Compl. (16-113 Doc. 3) at 12, 13. Despite a lengthy and detailed request for relief,

*see id.* at 14–16 ¶ VII, he does not seek reinstatement to the Reservation. Notably, after making this allegation while he was still incarcerated in Florida in November 2016, he was released to the Reservation, his supervised release was revoked, he returned to prison, and when he was again released in 2017, he again returned to the Reservation. *See* Revocation Judgment (Doc. 234) at 1 (showing residence address of Wolf Point, Montana) (filed Oct. 25, 2017).

By "banishment," therefore, Fourstar appears to mean his conviction disqualifies him from residing in tribally subsidized housing. *See, e.g.*, Revocation Hr'g Tr. (Doc. 276) at 38:12–39:4. The Fort Peck Tribes' sovereign immunity forecloses this Court's jurisdiction over that issue. *See, e.g., Jeffredo v. Macarro*, 599 F.3d 913, 918–19 (9th Cir. 2010) (citing *Shenandoah v. Halbritter*, 275 F. Supp. 2d 279, 285 (N.D.N.Y. 2003) (holding that federal court had no jurisdiction over challenge to tribal housing ordinance));[4] *see also* 2 Fort Peck Tribes C.C.J. §§ 110, 111.

Fourstar also claims he was denied public housing in Missoula. *See, e.g.*, Compl. (16-126 Doc. 2) at 2. The "Housing Choice Voucher Program" and

---

[4] If the Fort Peck Tribes have in fact permanently banished Fourstar from the Reservation, he may, after exhausting his tribal remedies, file a petition for writ of habeas corpus in this Court under 25 U.S.C. § 1303. *See, e.g., Tavares v. Whitehouse*, 851 F.3d 863, 875–76 (9th Cir. 2017); *Poodry v. Tonawanda Band of Seneca Indians*, 85 F.3d 874, 895–98 (2d Cir. 1996)). But, even with liberal construction, the Court cannot turn his present complaints into habeas petitions seeking reinstatement to the Reservation.

"Public Housing" information sheets attached to his complaint state "The Missoula Housing Authority will conduct a criminal background check on all adult household members, 18 & over. We will not provide assistance to sexual or violent offenders or individuals convicted of producing or distributing methamphetamines." Compl. Ex. (Doc. 2-1) at 5, 6. At least as to Fourstar, whose federal conviction for aggravated sexual abuse imposes a lifetime registration requirement, see 34 U.S.C. §§ 20911(4)(A)(i), 20915(a)(3), these provisions are mandated by federal law, see, e.g., 42 U.S.C. §§ 13663(a), 13664(a)(2).

All these allegations, which seek to stop enforcement of the conditions of supervised release or seek relief against consequences of Fourstar's conviction or supervised release, fail to state a claim on which relief may be granted.

**D. Arrest on January 23, 2017**

Fourstar claims he was unlawfully arrested on January 23, 2017, by a Roosevelt County deputy at Fort Peck Community College in Wolf Point, Montana. Wolf Point is on the Fort Peck Reservation. *See* Mot. to Am. Compl. (16-126 Doc. 7) at 3. Fourstar does not clarify the legal basis for his arrest.[5]

---

[5] A state officer is not authorized to arrest a tribal member on the Reservation for a state offense. *See* 18 U.S.C. § 1151. But the Fort Peck Tribes authorize state officers to arrest Indians "on any highway on the Reservation or within the boundaries of the cities of the Reservation for violations of the Tribal Code of Justice." 3 Fort Peck Tribes C.C.J. § 208(a); *see also* 7 Fort Peck Tribes C.C.J. § 229, 6 C.C.J. § 805(b)(3) (requiring sex offenders to register); 34 U.S.C. § 20903. And federal, state, and tribal officers are authorized to execute federal arrest warrants. *See, e.g.*, Fed. R. Crim. P. 4(c)(1); Mont. Code Ann. § 46-6-210(2); 3 Fort Peck Tribes C.C.J. § 206(n).

Six days before Fourstar's arrest, a federal arrest warrant was issued. *See* Warrant (Doc. 164), *Fourstar*, No. 4:02-CR-52-BMM (D. Mont. Jan. 17, 2017). The United States Marshals took custody of Fourstar on January 23, the date of the arrest he challenges. *See* Return on Warrant (Doc. 165), *Fourstar*, No. 4:02-CR-52-BMM (D. Mont. Feb. 1, 2017).

Six months later, on June 1, 2017, at the hearing on the petition to revoke his supervised release, Fourstar said he had been in federal custody—not state custody—since January 23, 2017. He received a sentence of time served, counting all time from January 23, 2017, to June 1, 2017, to be followed by 55 months' supervised release. *See* Final Revocation Tr. (Doc. 220) at 20:10–21:12, *United States v. Fourstar*, No. 4:02-CR-52-DLC (D. Mont. filed July 6, 2017).

Assuming, solely for the sake of argument, that the deputy arrested Fourstar on a state charge on the Reservation, Fourstar suffered no remediable harm or prejudice. The federal warrant established probable cause to support the arrest, and Fourstar received credit for all time spent in custody.

### IV. Opportunity to Amend

The Court has considered whether Fourstar could state a viable claim if given an opportunity to allege additional facts. But all of his claims seek relief against collateral and indirect consequences of presumptively lawful convictions and sentences. These claims cannot be cured by amendment. They are not viable.

## V. Conclusion

All allegations in *Eliason*, 4:16-CV-113-SPW, and in *Clark*, 4:16-CV-126-SPW, are dismissed for failure to state a claim on which relief may be granted.

Fourstar was a prisoner when he filed *Eliason*, 4:16-CV-113-SPW. *See* Compl. (16-113 Doc. 3) at 2 ¶ I. He is required to pay the filing fee of $350.00, *see* 28 U.S.C. § 1915(b), and dismissal of that complaint for failure to state a claim on which relief may be granted counts as a strike under 28 U.S.C. § 1915(g). Due to the lengthy stay, however, the Court will waive the initial partial filing fee under § 1915(b)(1)(A) and (B).

Accordingly, IT IS ORDERED:

1. Fourstar's motion to lift the stay (16-113 Doc. 34) is GRANTED. The stay in *Eliason*, 4:16-CV-113-SPW, and in *Clark*, 4:16-CV-126-SPW, is LIFTED.

2. Fourstar's motion to amend the complaint in *Clark* (16-126 Doc. 7) is GRANTED. The motion to amend is DEEMED part of the Complaint (16-126 Doc. 2) in *Clark*, 4:16-CV-126-SPW.

3. The Complaints in *Eliason*, 4:16-CV-113-SPW (Doc. 3), and in *Clark*, 4:16-CV-126-SPW (Docs. 2, 7), are DISMISSED WITH PREJUDICE for failure to state a claim on which relief may be granted.

4. The clerk shall enter judgment by separate document in each case.

5. The docket in *Eliason*, 4:16-CV-113-SPW, shall reflect that dismissal of

the action for failure to state a claim counts as one strike under 28 U.S.C. § 1915(g).

6. The Court CERTIFIES, pursuant to Federal Rule of Appellate Procedure 24(a)(4)(B), that any appeal from the disposition in either case would not be taken in good faith.

DATED this 6th day of December, 2018.

/s/ Susan P. Watters
Susan P. Watters
United States District Judge